BISHOP TRUST COMPANY, LIMITED, EXECUTOR
OF THE WILL AND ESTATE OF J. S. CANARIO,
DECEASED, *v.* MAURICE FURSTENBURG, DE-
FENDANT IN ERROR; HAWAIIAN STATION-
ERY COMPANY, LIMITED, GARNISHEE.

No. 1617.

ERROR TO CIRCUIT COURT FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

ARGUED JUNE 23, 1925.                    DECIDED AUGUST 18, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

CORPORATIONS—*purchase of stock from.*

The creation of shares of stock in a private corporation rests
in contract. Whether it be by subscription prior to incorporation
or agreement to purchase thereafter, shares of stock have no
existence in law until there is an undertaking by the prospective
shareholder, express or implied, to take the stock.

SAME—*same.*

The unauthorized issuance of a stock certificate by the presi-
dent and treasurer of a corporation does not create a contract of
sale of stock of the corporation. Their authority with reference
to the execution and delivery of stock certificates is purely clerical
and ministerial.

GARNISHMENT—*liability of garnishee—time as of which is fixed.*

Where it appears that an indebtedness exists from the garnishee
to a defendant acts of the garnishee subsequent to service of
garnishment process upon him, the effect of which is to extin-
guish the indebtedness, are not binding upon the plaintiff in the
garnishment proceeding. The rights of the plaintiff against the
garnishee are measured by the relation existing between the lat-
ter and the defendant at the time of service of process.

SAME—*proceedings to support—effect of answer of garnishee denying
liability.*

Where the return of the garnishee filed on or before return
day denies any indebtedness to the defendant, but upon examina-
tion of the garnishee before conclusion of the trial upon require-

ment therefor under the provisions of R. L. 1925, s. 2826, the undisputed facts disclose that the denial of indebtedness contained in the return was an erroneous legal conclusion as to the effect thereof and that in truth and in fact the garnishee at the time of service of process upon him was indebted to the defendant, the return is not conclusive and the court must pronounce the correct legal conclusion of which the undisputed facts admit.

OPINION OF THE COURT BY PETERS, C. J.

Plaintiff in error (plaintiff below) brought assumpsit against one Maurice Furstenburg as defendant naming the Hawaiian Stationery Company, Limited, among others as garnishee. Summons was served upon the garnishee November 10, 1924. Before the return day named in the summons the garnishee filed a return under oath of its president, Maurice Furstenburg (the same person sued as defendant), denying that the garnishee at the time of service of copy of summons upon it or since had any goods or effects of the defendant in its hands or that at the time of service it was indebted to the defendant. Thereafter and before conclusion of the trial of the cause plaintiff in error upon written notice served upon the garnishee required it to appear and be examined orally under oath as to the disclosure theretofore made by it. In response to such requirement Maurice Furstenburg as president of the corporation appeared and was examined. From the evidence of Mr. Furstenburg it appears that the garnishee at the time of service of garnishee summons upon it was a corporation organized and existing under the laws of the Territory of Hawaii; that its articles of incorporation which were filed in the office of the treasurer of the Territory on August 25, 1924, provide that the officers of the corporation be a president, vice-president, secretary and treasurer, who together with five others should constitute the board of directors; that its capital stock was $75,000 divided into 5000 shares of the par value of fifteen dollars each;

that at the time of the incorporation 3750 shares had been subscribed for; that the corporation took over the going business of Mr. Furstenburg and continued such business since its organization; that on November 6, 1924, without prior authorization thereto of the board of directors or stockholders in meeting duly assembled or otherwise, Maurice Furstenburg as president of the Hawaiian Stationery Company, Limited, with its treasurer signed and issued to and in the name of Maurice Furstenburg 445 shares of the capital stock of the Hawaiian Stationery Company, Limited, garnishee; that on November 29, 1924, at a meeting of the stockholders of the company representing 948 shares, including the 445 shares issued to Mr. Furstenburg on November 6, 1924, as aforesaid, the issuance and delivery to Mr. Furstenburg of said 445 shares in consideration of the cancellation of the indebtedness of the corporation to Mr. Furstenburg were approved; that on November 6, 1924, the Hawaiian Stationery Company, Limited, was indebted to Mr. Furstenburg in about the sum of the par value of the capital stock on that day issued to him. The trial court upon this evidence held that the garnishee at the time of service of summons upon it was not indebted to Maurice Furstenburg and the garnishee was accordingly discharged. But two errors are assigned, (1) that the circuit court erred in finding in its decision that the garnishee, Hawaiian Stationery Company, Limited, was not indebted to the defendant Maurice Furstenburg, and in ordering the discharge of said garnishee; (2) that the circuit court erred in entering judgment in favor of the garnishee, Hawaiian Stationery Company, Limited. Both assignments will be considered together.

The creation of shares of stock in a private corporation rests in contract. Whether it be by subscription prior to incorporation or agreement to purchase there-

after shares of stock have no existence in law until there is an undertaking by the prospective shareholder, express or implied, to take the stock. Prior to such undertaking, although part of the authorized capital, its qualities as property are potential only. "Stock can be created only by contract, whether it be in the simple form of subscription or in any other mode. There must be an agreement to take the stock, and nothing short of this can create it. This imparts to the stock the quality of property, which before it did not possess. It is called capital stock in the charter, because the corporate capacity to create it is given. The term stock, as used in the charter, before it is taken by subscription, means nothing more than a power in the directors to receive subscriptions for stock." *Sturges* v. *Stetson,* 23 Fed. Cas. No. 13,568. The 445 shares of the capital stock of the Hawaiian Stationery Company, Limited, issued to Maurice Furstenburg on November 6, 1924, were a part of the authorized capital of the corporation remaining unissued after incorporation. As such they were not assets of the corporation. (*Christensen* v. *Eno,* 12 N. E. (N. Y.) 648; *London & Lancashire Fire Ins. Co.* v. *Ludwig,* 112 S. W. (Ark.) 197, 199; 14 C. J., title "Corporations," §552.) While unissued they had neither legal existence nor validity as shares of stock in the corporation. When legally issued they represented a proportionate interest of the shareholder in the corporate property. (*Christensen* v. *Eno, supra.*)

Much might be said as to how and to whom stock· which has not been subscribed for although authorized may be disposed of after incorporation. With that question, however, we are not concerned. We may assume for the purposes of this case that the corporation might legally have contracted with Furstenburg to issue to him 445 shares of the capital stock of the company in con-

sideration of his discharge of the company's indebtedness. But no express contract to that effect was ever made. There is no pretense of such a contract. The facts merely disclose that on November 6, 1924, Furstenburg, who as president of the company had access to its stock certificates, possessed himself of one, filled it out in his name as the owner of 445 shares and he and the treasurer of the company signed it in their respective official capacities. His explanation of his act is that the company was indebted to him in an amount equal to 445 shares of the capital stock of the company at par and that he issued this stock to himself in consideration of his discharge of the company's indebtedness to him. It does not appear that this was communicated to the treasurer of the company or, if so, that the treasurer was authorized to contract to that effect on behalf of the company. The mere issuance of a stock certificate by the president and treasurer of the corporation does not create a contract of sale of stock of the corporation. Their authority with reference to the execution and delivery of stock certificates is purely clerical and ministerial. (*Lakewood Gas Co.* v. *Smith,* 51 Atl. (N. J.) 152, 153.) Furstenburg could certainly not contract with himself concerning the sale of shares of the capital stock of the corporation. Moreover, even if we were to assume that the issuance of the stock implied an undertaking by Furstenburg to pay to the corporation the par value thereof, in the absence of ratification by the corporation prior to the service of garnishee process the indebtedness of the corporation to Furstenburg remained unimpaired. It affirmatively appearing that no valid contract was ever entered into between Furstenburg and the corporation by which the latter agreed to issue to him 445 shares of its capital stock in consideration of the discharge of the company's indebtedness to him the relation of debtor and creditor

theretofore existing between them continued and existed on November 10, 1924, when the garnishee process was served.

Nor, assuming the shareholders' meeting of November 29, 1924, to have been legally assembled and held, could its approval of Furstenburg's prior acts alter the situation. The rights of the plaintiff against the garnishee are to be measured by the relation existing between the latter and the defendant at the time of service of garnishee process upon the corporation. Where as here an indebtedness exists from a garnishee to a defendant, acts of the garnishee subsequent to service of garnishee process upon it, the effect of which is to extinguish the indebtedness, are not binding upon the plaintiff in the garnishment proceeding.

It affirmatively appearing from the undisputed facts that despite its denial under oath the garnishee at the time of the service of process upon it was indebted to the defendant the plaintiff was entitled to a judgment against the garnishee for the amount of such indebtedness or so much thereof as was sufficient to satisfy the judgment. Where as here the return of the garnishee filed on or before return day denies any indebtedness to the defendant, but upon examination of the garnishee before conclusion of the trial upon requirement therefor under the provisions of R. L. 1925, s. 2826, the undisputed facts disclose that the denial of indebtedness contained in the return was an erroneous legal conclusion as to the effect thereof and that in truth and in fact the garnishee at the time of service of process upon it was indebted to the defendant, the return is not conclusive and the court must pronounce the correct legal conclusion of which the undisputed facts admit. Under the provisions of R. L. 1925, s. 2826, from the time of the service of process upon the garnishee the debt owing

from it to the defendant was secured in its hands to pay such judgment as plaintiff might recover in the action. And under the provisions of R. L. 1925, s. 2827, the debt so secured owing from the garnishee to the defendant or such part thereof as should be sufficient for that purpose was liable to pay the same. To discharge the garnishee, Hawaiian Stationery Company, Limited, was error.

So much of the judgment as ordered the discharge of the Hawaiian Stationery Company, Limited, as garnishee is reversed and the cause remanded with instructions to the trial court to modify said judgment in accordance with this opinion.

*A. Withington* (*Robertson & Castle* on the briefs) for plaintiff in error.

*D. E. Metzger* (also on the brief) for the garnishee.